## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

**SAMUEL NISWONGER,**

        **Plaintiff,**

-v-

**LIBERTY LIFE ASSURANCE
COMPANY OF BOSTON**

        **Defendant.**

**Case No. 3:12-cv-374**

**Judge Thomas M. Rose**

_____

### ENTRY AND ORDER OVERRULING NISWONGER'S MOTION FOR ERISA DISCOVERY (Doc. #7)

_____

Now before the Court is a Motion for Discovery brought by Plaintiff Samuel Niswonger ("Niswonger"). (Doc. #7.) Therein, Niswonger argues that the Court should allow the discovery attached to his Motion For Discovery as Exhibit A or allow the issuance of a third-party subpoena to MES Solutions, Inc.

Niswonger has not attached an Exhibit A to his Motion. However, he has attached an Exhibit A to his Reply which is titled "Plaintiff's Proposed First Set of Discovery Requests."

The closest thing to a request for discovery attached to Niswonger's Motion is an email to Defendant Liberty Life Assurance Company of Boston's ("Liberty's") counsel attached as Exhibit 1. Therein, Niswonger's counsel is identifying areas where he intends to seek discovery. Specifically, Niswonger's counsel seeks to know the amount of time that was taken to review a report by Dr. Robert Brown and what Dr. Brown was actually paid to review the records and write a report. He also asks for some explanation concerning how MES distributes information to physicians. He also wants to know how much business Dr. Brown receives from MES and

how many types of cases Dr. Brown has done for Liberty. Finally, Niswonger's counsel seeks plan documents regarding the ERISA plan under which he is seeking benefits.

Exhibit 2 to Niswonger's Motion is a letter he received from Liberty's counsel. Therein, Liberty's counsel asserts that Liberty has not directly hired Dr. Brown, and, instead, requests doctors for a given specialty for independent medical examinations and peer reviews from an independent vendor, MES in this case. Liberty also asserts that it does not select or pre-select the doctors that vendors like MES assign to cases, and that it sends the entire administrative record to MES for the selected doctor. In addition, Liberty does not track or even know what compensation Dr. Brown may or may not receive. Liberty also asserts that it does not track the number of denials or the number of times that Dr. Brown or MES have supported denials, and that Liberty has no incentive, bonus or reward program for any third-party reviewers.

The amount of money paid to MES is, according to Liberty, already in the administrative record for this case. Liberty says that it has forwarded a copy PNC's Plan and Summary Plan Description to Niswonger's counsel. In its Response to the instant Motion, Liberty affirms that it will make the Plan and Summary Plan Description a part of the Administrative Record for this case.

The proposed discovery request attached to Niswonger's Reply is 19 interrogatories. Three of them are "boiler plate" that could reasonably be expected to be included with any group of interrogatories. The remainder are the same or request more detail on the same topic as the requests included in Niswonger's email to Liberty.

Niswonger's Motion is now fully briefed and ripe for decision. The relevant legal provisions will first be set forth followed by an analysis of the Motion.

-2-

## RELEVANT LEGAL PROVISIONS

District court review of an ERISA claim for denial of benefits is confined to the administrative record with a limited exception. *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 619(6th Cir. 1998). In *Wilkins*, the Sixth Circuit determined that evidence outside the record could be considered only if that evidence is offered in support of a procedural challenge to the administrator's decision. *Id.* A procedural challenge includes an alleged lack of due process afforded by the administrator or alleged bias by the administrator. *Id.* Finally, the Sixth Circuit determined that any prehearing discovery was limited to such procedural challenges. *Id.*

Following *Wilkins*, district courts in the Sixth Circuit differed somewhat in determining what appropriately triggered the limited exception to the general rule regarding discovery in ERISA cases. *Thornton v. The Western and Southern Life Insurance Company Flexible Benefits Plan*, No. 3:08CV-00648-M, 2010 WL 411119 at *2 (W.D. Ky. Jan. 28, 2010.) However, all of these courts required the plaintiff to do more than allege procedural challenges. *Id.* Finally, these courts limited any discovery to the procedural challenges. *Id.*

Then, in 2008, the Supreme Court issued the *Glenn* decision. *Metropolitan Life Insurance Co. v. Glenn*, 544 U.S. 105 (2008). Prior to *Glenn*, an ERISA plaintiff needed to make a threshold showing of bias or a procedural violation before addition discovery was permitted. *Thornton*, 2020 WL 411119 at *2.

In *Glenn*, the Supreme Court decided that a per se conflict of interest exists when an entity that administers an ERISA plan "both determines whether an employee is eligible for benefits and pays those benefits out of its own pockets." *Glenn*, 544 U.S. at 108. The Supreme Court says that a conflict of interest should be weighed as a factor in determining whether there

has been an abuse of discretion,[1] but does not identify any special evidentiary rules for evaluating this conflict. *Id.* at 115-16.

The *Glenn* Court says that the evaluation of an ERISA claim will often take into account several different factors, of which a conflict of interest may be one. *Id.* at 117. When several factors are involved, "any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance." *Id.* A conflict of interest "should prove more important… where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration." The conflict of interest is "less important… where the administrator has taken active steps to reduce potential bias and to promote accuracy…." *Id.*

While *Glenn* did not explicitly answer the question of whether discovery outside the administrative record should be permitted as a matter of course when there is a per se conflict of interest, it arguably did so implicitly. *See Thornton*, 2010 WL 411119 at *2. Thus, since *Glenn*, some district courts in the Sixth Circuit have found that discovery beyond the administrative record may be warranted to assist the court in determining whether a per se conflict of interest gives rise to an actual abuse of discretion. *Id.*

Also since *Glenn* issued, the Sixth Circuit has determined that *Glenn's* holding does not mean that discovery is automatically available where a defendant is both the administrator and the payor under an ERISA plan. *Johnson v. Connecticut General Life Insurance Co.*, 324 F.

---

[1]This Court is not determining here whether Liberty's decision is reviewed under a de novo standard or an abuse of discretion standard.

-4-

App'x 459, 467 (6th Cir. 2009). District courts, according to the Sixth Circuit, may evaluate and determine whether and to what extent limited discovery is appropriate. *Id.*

Post-*Glenn* discovery has generally been limited to a search for evidence of whether an inherent conflict of interest affected a benefits decision. *Id.* at *3. Appropriate areas of inquiry have been:

> 1. Incentive, bonus or reward programs or systems, formal or informal, for any employee(s) involved in any meaningful way in reviewing disability claims.
>
> 2. Contractual connections between plan administrator/payor and the reviewers used in plaintiff's claim and financial payments paid annually to the reviewers from the administrator/payor.
>
> 3. Statistical data regarding the number of claims files sent to the reviewers and the number of denials which resulted.
>
> 4. The number of times the reviewers found claimants able to work in at least a sedentary occupation or found that claimants were not disabled.
>
> 5. Documentation of administrative processes designed only to check the accuracy of grants of claims - limited to claims guidelines actually consulted to adjudicate plaintiff's claim.

*Busch v. Hartford Life and Accident Insurance Co.*, No. 5:10-00111-KKC, 2010 WL 3842367 at *4 (E.D. Ky. Sep. 27, 2010).

When discovery is permitted, its scope is narrow. *Id.* To that end, discovery into areas falling under the general category of "reviewer credibility" is typically not permitted. *Id.* These areas falling under the category of "reviewer credibility" include information such as personnel files, performance reviews and employee pay records. *Id.*

## ANALYSIS

In this case, Liberty was both the plan administrator and the payor of long-term disability benefits to Niswonger. Liberty admits this in its Answer. (Doc. #4, ¶¶ 1,6.) This arrangement is

also confirmed in an opinion issued by Judge Black in *Niswonger v. PNC Bank Corp. & Affiliates Long Term Disability Plan*, Case No. 3:10-cv-377, doc. #17. Thus, Liberty has a per se conflict of interest as envisioned by the Supreme Court in *Glenn*.

Niswonger makes no specific allegations of a lack of due process or bias by Liberty. Thus, Niswonger's request for discovery will be determined based upon Liberty having a per se conflict of interest.

If the Court were to grant Niswonger's request for discovery, the scope of such a request would be limited to the five (5) categories identified in *Busch*. However, Liberty has responded to each of Niswonger's informal requests for discovery as more fully set forth above. As for Niswonger's proposed discovery request attached to his Reply, these too have been addressed by Liberty, are irrelevant to the Court's evaluation of Liberty's per se conflict of interest, or seek more detail on a subject on which Liberty does not have records. Finally, Liberty has represented to the Court that it will be making the appropriate Plan and Summary Plan Description part of the Administrative Record in this case.

Niswonger's counsel would appear to be on what Liberty terms a "fishing expedition." In one specific instance, Niswonger attempts to show that information on an electronic database "runs contrary" to Liberty's assertion that it has no incentive, bonus or reward program for third-party reviewers. Niswonger identifies a Linkedin page for Liberty case manager Emily Brockett. First, Emily Brockett is not a third-party reviewer. Second, if she were, the information on the page does not indicate that she is compensated by an incentive, bonus or award program.

In another specific instance, Niswonger's counsel asserts that, at MES, peer review reports are constructed by two different types of individuals, nurses and doctors, and the doctor

does not review the actual records provided by a plaintiff but reviews a report created by a nurse which summarizes the actual records. Niswonger's counsel reaches these conclusions by viewing MES's website. However, the Court has reviewed the website pages submitted by Niswonger's counsel and is unable to reach these same conclusions.

In this case, the Court does not need anything further to properly factor in Liberty's per se conflict of interest. To the extent that Niswonger's Motion for ERISA Discovery is for discovery from Liberty, it is overruled.

Niswonger also asks the Court to allow the issuance of a third-party subpoena to MES Solutions, Inc. Should Niswonger's counsel issue a subpoena to MES, the Court stands ready to adjudicate any opposition to such a subpoena.

**DONE** and **ORDERED** in Dayton, Ohio this Eleventh Day of June, 2013

                                                              **s/Thomas M. Rose**
                                                    _____
                                                          THOMAS M. ROSE
                                                    UNITED STATES DISTRICT

JUDGE

Copies furnished to:

Counsel of Record